# ROBERT COCHRANE v. NATIONAL ELEVATOR COMPANY.

(127 N. W. 725.)

**Trover and Conversion — Evidence — Admissibility.**

1. In an action to recover for the alleged conversion of certain grain claimed to have been delivered by plaintiff to defendant elevator company, evidence as to the delivery of such grain examined, and *held* both competent and sufficient to establish the quantity of grain so delivered.

Note.—It has been said, in speaking of the comparison of handwritings, that there is perhaps no branch of the law which has given rise to such contrariety of adjudications in this country. The question is discussed at length and all the authorities reviewed in an elaborate note in 62 L.R.A. 817; and it is also the subject of a note in 6 Am. Dec. 171. As shown by the cases reviewed in these notes,

**Trover and Conversion — Highest Market Value — Evidence.**

2. Evidence as to the highest market value of the grain between the date of the alleged conversion and the date of the trial examined, and *held* both competent and amply sufficient to support the verdict.

**Appeal and Error — Exceptions Not Taken Below — Evidence.**

3. Certain assignments predicated upon rulings of the trial court relating to offered testimony as to the system and manner of transacting business adopted by defendant in its elevator at Grand Harbor held without merit. Furthermore, the rulings thus complained of were not excepted to, and cannot be noticed. *Held*, further, that the appellant's assumption that it was not permitted to show payment for this grain is not justified by the record,—the exact reverse being true,—but, on the contrary, no competent evidence was offered to prove such payment.

**Principal and Agent — Undisclosed Instructions to Agent — Evidence.**

4. The issues being as to whether plaintiff delivered the grain to defendant as alleged, and, if so, whether defendant has paid plaintiff for the same, the trial court properly excluded offered testimony relative to private instructions given by defendant to its local agent, and not communicated to plaintiff, regarding the receipt of grain at its elevator and also evidence tending to show violations of such instructions.

**Appeal and Error — Harmless Error — Custom and Usage — Evidence.**

5. Plaintiff was permitted over objection to show the custom and usage at Grand Harbor in receiving grain at defendant's elevator and issuing the tickets therefor at a later date. *Held*, nonprejudicial.

**Appeal and Error — Evidence — Comparison of Handwriting — Nonprejudicial Ruling.**

6. Defendant offered in evidence solely for the purpose of comparison of handwritings a certain exhibit admittedly bearing plaintiff's genuine signature. The purpose of this testimony was to aid the jury in determining the disputed question of fact as to whether certain other exhibits purporting to bear plaintiff's signature to receipts for the payment of his identical grain were his genuine signatures or mere forgeries. The trial court excluded such

---

several states have established a liberal common-law rule allowing comparison with writings which are irrelevant to any issue in the case, the test of their admissibility as standards of comparison being merely proof, to the satisfaction of the court, of their genuineness. Many other states, as well as England and Canada, have adopted the same rule by statute.

The question of the competency of handwriting as a standard for comparison is the subject of another note in 63 L.R.A. 428. The competency of expert witnesses for comparison is treated in a note in 63 L.R.A. 937, while the competency of witnesses to handwriting generally is considered in 63 L.R.A. 964.  _ . - --

offered exhibit. Held, that such ruling was erroneous, but nonprejudicial, for reasons stated in the opinion.

**Evidence — Comparison of Handwriting — Standards Allowed.**

7. Irrelevant papers are not admissible in evidence for the sole purpose of furnishing a standard of comparison, but exceptions to this rule are made in those cases where the papers offered are conceded by the opposite party to be genuine, or are such as he is estopped to deny, or where for other reasons no collateral issues can be raised by their introduction.

**Appeal and Error —Unchallenged Instructions the Law of the Case.**

8. The trial court instructed the jury that the conversion took place, if at all, on September 25th. No exception was taken thereto, and the correctness of such instruction was in no manner challenged in the trial court. It therefore became and is the law of the case. In view of this, appellant's contention in this court that the conversion took place during the latter part of October, and that there is no evidence showing the highest market value or any value of the grain after such date, is untenable.

Opinion filed May 27, 1910. Rehearing denied August 31, 1910.

Appeal from District Court, Ramsey county; *John F. Cowan, J.*

Action by Robert Cochrane against the National Elevator Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals.

Affirmed.

*Van Derlip & Lum (Guy C. H. Corliss, of counsel),* for appellant.

Newspaper reports of market prices are not competent. Whelan v. Lynch, 60 N. Y. 469, 19 Am. Rep. 202; Nelson, Morris & Co. v. Columbian Iron Works & Dry Dock Co. 76 Md. 354, 17 L.R.A. 851, 25 Atl. 417; Texas & P. R. Co. v. Slator (Tex. Civ. App.) 102 S. W. 156.

Appellant's habit or system of doing business may be shown. Adams v. Coulliard, 102 Mass. 167; Wigmore, Ev. ¶¶ 92, 93, 375, et seq.; 11 Am. & Eng. Enc. Law, p. 512.

Appellant should have been allowed to show its agent's instructions, and evidence of business with him contrary thereto should not have been received. Columbia Mill Co. v. National Bank, 52 Minn. 229, 53 N. W. 1061; 1 Am. & Eng. Enc. Law, pp. 965, 989, 999, 1002, and notes; Mechanics' Bank v. New York & N. H. R. Co. 13 N. Y. 632; Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 829; Jackson v. Mutual Ben. L. Ins. Co. 79 Minn. 46, 81 N. W. 545, 82 N. W. 366;

Brown v. Massachusetts Mut. L. Ins. Co. 59 N. H. 298, 47 Am. Rep. 205; Murray v. C. N. Nelson Lumber Co. 143 Mass. 250, 9 N. E. 634; Eckart v. Roehm, 43 Minn. 271, 45 N. W. 443; Mechem, Agency, § 276.

Local custom must be so general and long existing as to warrant the presumption that parties dealt with reference to it. The Paragon, 1 Ware, 322, Fed. Cas. No. 10,708; 2 Jones, Ev. 469, et seq.; 29 Am. & Eng. Enc. Law, pp. 412, 414; Porter v. Hills, 114 Mass. 110.

For purpose of comparing handwriting, an admittedly genuine signature should be received. University of Illinois v. Spalding, 62 L.R.A. 817, note; Wigmore, Ev. §§ 1994, 2001, et seq. 2016; Morrison v. Porter, 35 Minn. 425, 59 Am. Rep. 331, 29 N. W. 54; Mississippi Lumber & Coal Co. v. Kelly, 19 S. D. 577, 104 N. W. 265, 9 A. & E. Ann. Cas. 449; Dietz v. Fourth Nat. Bank, 69 Mich. 287, 37 N. W. 220; Cannon v. Sweet (Tex. Civ. App.) 28 S. W. 718; Moore v. Palmer, 14 Wash. 134, 44 Pac. 142.

*Burke, Middaugh, & Cuthbert,* for respondent.

Witness may testify from inquiries made, as to market values. 2 Elliott, Ev. § 1302; Dooley v. Gladiator Consol. Gold Mines & Mill. Co. 134 Iowa, 468, 109 N. W. 864, 13 A. & E. Ann. Cas. 297; 26 Cyc. Law & Proc. p. 819; Murray v. Stanton, 99 Mass. 345; Humphreys v. Minnesota Clay Co. 94 Minn. 469, 103 N. W. 338.

An agent binds his principal when he acts within his apparent and ostensible authority. Nebraska Bridge Supply & Lumber Co. v. Conway, 127 Iowa, 237, 103 N. W. 122; Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861; Farmer v. Bank of Graettinger, 130 Iowa, 469, 107 N. W. 170; Meyer v. Doherty, 133 Wis. 398, 13 L.R.A.(N.S.) 249, 126 Am. St. Rep. 967, 113 N. W. 667; Merz v. Croxen, 102 Minn. 69, 112 N. W. 890; Herrick v. Humphrey Hardware Co. 73 Neb. 809, 119 Am. St. Rep. 917, 103 N. W. 687, 11 A. & E. Ann. Cas. 201; Oleson v. Merrill, 20 Wis. 463, 91 Am. Dec. 428, Rev. Codes 1905, §§ 5769–5771, 5784.

If property comes into one's hands without a valid contract and he converts it, he is liable. Cutter v. Fanning, 2 Iowa, 580; Wildey v. Cox, 25 Mich. 116; 26 Am. & Eng. Enc. Law, p. 724; Myers v.

Meinrath, 101 Mass. 366, 3 Am. Rep. 370; Dwight v. Brewster, 1 Pick. 50, 11 Am. Dec. 137.

Where a custom is so general and well settled that parties are presumed to have dealt with reference to it, it is a part of the contract. 1 Elliott, Ev. §§ 172, 607; 1 Greenl. Ev. § 14 J.

A paper otherwise irrelevant cannot be admitted for the purpose of comparison of handwriting. Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848; Kennedy v. Upshaw, 64 Tex. 411; Cook v. First Nat. Bank (Tex. Civ. App.) 33 S. W. 998; Merritt v. Campbell, 79 N. Y. 625; Hynes v. McDermott, 82 N. Y. 51, 37 Am. Rep. 538; United States v. Jones, 10 Fed. 469; Randolph v. Loughlin, 48 N. Y. 456; People v. Parker, 67 Mich. 222, 11 Am. St. Rep. 578, 34 N. W. 720; Vinton v. Peck, 14 Mich. 287; First Nat. Bank v. Robert, 41 Mich. 709, 3 N. W. 199; Weidman v. Symes, 116 Mich. 619, 74 N. W. 1008.

FISK, J. Plaintiff sues to recover for the alleged conversion by defendant of 84 bushels of flax, 265 bushels of No. 1 hard wheat, and 307 bushels of Durham wheat which he claims to have delivered to defendant at its elevator at Grand Harbor, this state, between the 7th and the 11th days of July, 1907. The defense amounts to a general denial with a counterclaim for a small sum for elevator charges for handling the grain. The trial resulted in a verdict in plaintiff's favor for $615.80. A motion for a new trial was made and denied, and judgment entered on such verdict. The appeal is both from the final judgment, and from the order denying the new trial.

The assignments of error number 65, but they are grouped and discussed in the brief of appellant's counsel under eight subdivisions or points. These will be noticed in the order presented.

1. Error is alleged in the admission of certain evidence as to the quantity of grain delivered by respondent to appellant, and the sufficiency of the evidence to show the quantity of grain, if any, so delivered is challenged. We discover no merit in either contention. Plaintiff was not restricted to the contents of defendant's books in proving the delivery of the grain. He testified positively that he knew the amount of grain that he delivered at defendant's elevator, that he delivered it personally, and saw it weighed, and he detailed the exact number of bushels of each kind of grain so delivered, which

testimony corresponds exactly with the allegations of the complaint. That such evidence was both competent and amply sufficient to support the verdict we entertain no doubt.

2. It is next contended that the evidence as to the value of the grain was improperly received, and that the evidence to show the market price thereof is insufficient. The evidence objected to is in brief as follows: Plaintiff testified that he knew the highest market prices of grain at Grand Harbor between September 25, 1907, and the date of the trial, and he details such prices at $1.06½ for No. 1 hard wheat, 88 cents for No. 1 Durham wheat, and $1.24 for flax. He says the highest market price was in October, but cannot fix the exact date. His knowledge regarding prices is based on inquiries made at Grand Harbor and other places in that vicinity, also from general information obtained from the Minneapolis Journal and other newspapers. He testified that he watched the markets generally and read the market reports every day. He also testified: "I have kept track of the price from time to time—inquired the price and read the papers and seen the market reports. I have made inquiries at different places, at Grand Harbor and Devils Lake. I am interested in the market, being a considerable grower of grain. . . . I had 10,000 bushels of wheat, 1,000 bushels of flax, 4,000 bushels of barley, and 2,200 or 2,300 bushels of oats. I marketed the major part of that grain at Grand Harbor, and I was interested in the price of grain because I had grain to sell. . . . I have inquired at the elevators the highest prices between October and the present time, and read the Journal, and found what month it was the highest and what the highest price was." Witness Emigh was shown qualified to testify as to prices at Grand Harbor in the month of October, and he fully corroborates plaintiff as to the highest price of wheat during that month. Witness Ness, agent for the Farmers' Grain Company at Grand Harbor during the fall of 1907, fully corroborates plaintiff's testimony as to prices at that time. There can be no doubt that this witness was shown to be fully qualified to testify upon the subject of prices.

It is a significant fact that defendant nowhere attempted to show that the prices were other than as testified to by plaintiff and his witnesses, although it no doubt had in its possession at all times definite record information upon the subject. While it is true plaintiff had

the burden of establishing such market price, and it was in no way incumbent on defendant to furnish evidence upon the question, the fact that no attempt was made by defendant to refute plaintiff's testimony is a strong circumstance tending to corroborate the accuracy thereof. That the evidence of plaintiff and his witnesses upon the question of the market prices of the grain was both competent and sufficient is, we think, entirely clear.

3. It is next contended that "appellant should have been permitted to show its system and manner of transacting business at Grand Harbor, and that it had actually paid for the grain claimed to have been delivered to it by respondent." We are unable to discover any merit to such contention. The rulings complained of relative to the admission of evidence regarding the system and manner of transacting business in defendant's elevator at Grand Harbor, so far as they were adverse to appellant, were not excepted to, and there is nothing in the record, so far as we are able to discover, to justify appellant's assumption that it was not permitted to show, if it could, that it had actually paid plaintiff for this grain. In fact, the exact reverse is true, but no competent evidence was offered to prove such payment, and there is not a scintilla of evidence of such payment in the record.

4. Appellant complains of the ruling of the court below in excluding offered testimony as to instructions given by defendant to its agent at Grand Harbor; and it also contends that certain evidence was erroneously received relative to certain methods of doing business adopted by its agent contrary to defendant's instructions. A great deal of this class of testimony was introduced, but we are at a loss to see how it was in any manner material to the issues involved. Private instructions from the principal to the agent not brought to the knowledge of plaintiff were clearly inadmissible, and in no way binding upon him. Furthermore, the cause of action is for conversion of this grain, the issues being whether, as a fact, such grain was delivered by plaintiff into defendant's elevator, and, if so, whether defendant thereafter and prior to the commencement of the action wrongfully converted the same to its own use. If the grain was, in fact, delivered to defendant, the fact that the agent violated his principal's instructions in any respect could in no manner exonerate the principal from liability, even though plaintiff had knowledge of such instructions. The

citation of authorities upon propositions so elementary is wholly unnecessary. The authorities cited by appellant's counsel dealing with the subjects of the scope of an agent's authority, either actual or ostensible, and with the question of the principal's ratification of his agent's acts, have no application to the case at bar. If defendant received plaintiff's grain, it is guilty of the conversion thereof if it has refused to account therefor by payment for the same or delivery thereof on demand.

5. Under point 5 of appellant's brief, counsel challenges the ruling of the trial court in admitting evidence of custom and usage at Grand Harbor relative to the matter of receiving grain at elevators by agents, and accounting therefor by the issuance of tickets later. We think such evidence was admissible, so far at least, as it related to the custom at defendant's elevator at that place as it tended to explain and account for the fact that tickets were not issued nor demanded by plaintiff for each load of grain when delivered. Such evidence tended, for what it was worth, to corroborate plaintiff's testimony that no tickets were in fact issued and delivered to him for the grain in question, but even conceding, for the sake of argument, that such evidence was inadmissible, we fail to see how its introduction was prejudicial to appellant. That plaintiff in fact delivered the grain at the defendant's elevator as claimed by him is not seriously controverted. In fact, no evidence was offered by defendant to refute plaintiff's testimony on this point. We are agreed that no prejudicial error was committed by the trial court in admitting this class of testimony. Hence the assignments of error based on the admission thereof must be overruled.

6. It is appellant's sixth contention that Exhibits 4, 5, 6, and 7 offered in evidence by appellant should have been received. These exhibits are wheat tickets issued or purporting on their face to have been issued to plaintiff in June preceding the delivery of the grain in question, and representing other grain delivered at this elevator by plaintiff, about which there is no controversy. Plaintiff admitted that his name signed to the receipt on Exhibit 4 is his genuine signature. It is appellant's contention, in brief, that at least Exhibit 4 was competent for the purpose of showing the system of appellant, its method of doing business, and the manner in which these parties had transacted business in the past to plaintiff's knowledge, also as tending to

refute plaintiff's testimony as to custom and usage in receiving grain at Grand Harbor. We fail to see how such exhibit would tend in any way to discredit plaintiff's testimony or to disprove the facts sworn to by him. While such ticket apparently represents but a single load of wheat, it does not appear that other wheat was delivered at such elevator by plaintiff either immediately prior or subsequent to June 5th, the date thereof. Exhibits 5, 6, and 7, on the contrary, affirmatively disclose that they must have represented several distinct loads, Exhibit 7 having been issued for 875½ bushels. But, in any event, for reasons above stated we do not see how the exclusion of such exhibits could have resulted prejudicially to defendant.

It is also earnestly insisted both in appellant's brief and in oral argument, that Exhibit 4 was admissible for another reason, to wit, to aid the jury in determining whether Exhibits 8, 9, 10, and 11, which purport to represent the grain in question and which also contain receipts for payment of such grain purporting to have been signed by plaintiff, are genuine or mere forgeries. Thus we have fairly presented for decision the question whether an instrument concededly bearing the genuine signature of a party is admissible solely for the purpose of comparison of handwritings in order to prove the genuineness of a disputed signature. It is contended by respondent's counsel that such testimony was merely cumulative and therefore its rejection not prejudicial, as two other instruments were in evidence, concededly bearing plaintiff's genuine signature. For the purpose of settling in this jurisdiction a much mooted and important question of practice, we shall assume, without deciding, that respondent's contention as above stated is not tenable.

Upon the question here raised the authorities are in irreconcilable conflict. It would serve no useful purpose to review at length in this opinion the many cases upon the subject. They may be found collated in the valuable notes to the cases of Mississippi Lumber & Coal Co. v. Kelly, 19 S. D. 577, 104 N. W. 265, 9 A. & E. Ann. Cas. 449, and University of Illinois v. Spalding, 71 N. H. 163, 62 L.R.A. 817, 51 Atl. 731. See also 15 Am. & Eng. Enc. Law, 2d ed. pp. 267, 268, and 3 Supp. thereto, p. 382, and cases cited; 6 Enc. Ev. p. 410; 2 Elliott, Ev. § 1105; 3 Wigmore, Ev. §§ 1994, 2001–2016. Three distinct rules seem to prevail under the authorities. As stated in 2

Elliott on Evidence, § 1105: "In a few jurisdictions, the rule is that the opinions of experts based on any comparison is improper; in other jurisdictions, the rule is that opinions are admissible in case the writings to be compared are in evidence for another purpose and admitted to be genuine; and the third rule is that opinions of experts are admissible as in the rule immediately preceding and in addition on writings whose genuineness has been proved on the trial for the express purpose of comparison. The reason given for holding that the only papers that can be used in such an examination of an expert are those which have been brought into the case for another purpose is that such a limitation is necessary in order to avoid the evil of collateral issues, the danger of fraud in selecting specimens, and the danger of misleading the jury. But it is said, on the other hand, with much reason, that when the writings are admitted to be genuine these objections are of no force, that in either case the result so depends upon skill and judgment in making the comparison and discovering the resemblances and differences that there is little danger of misleading the jury, and that policy and necessity require that such a comparison should be permitted." The rule which we deem the more sound and better rule and the one which we shall adopt is that stated in 15 Am. & Eng. Enc. Law, 2d ed. p. 268, as follows: "Irrelevant papers are not admissible in evidence for the sole purpose of furnishing a standard of comparison, but that to this rule exceptions are made in those cases . . . where the papers offered are conceded by the opposite party to be genuine, or are such as he is estopped to deny, or where for other reasons no collateral issues can be raised by their introduction." That the court is in no way fettered in adopting a rule upon the subject by any statute seems not to have been questioned, either by this court or the South Dakota court, in the cases of Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003, and Mississippi Lumber & Coal Co. v. Kelly, 19 S. D. 577, 104 N. W. 265, 9 A. & E. Ann. Cas. 449. Until such time as the legislature sees fit to prescribe a rule upon the subject, there can be no doubt as to our power to adopt such rule as we deem just and proper.

Applying the above rule to the case at bar, it follows that it was error to exclude Exhibit 4, but not Exhibits 5, 6, or 7. The ruling, however, was not prejudicial. We have made a personal comparison.

of Exhibits 8, 9, 10, and 11 with Exhibit 4 and the two other exhibits in evidence bearing plaintiff's genuine signatures, and we. feel justified in saying that the disputed signatures bear strong, if not conclusive, evidence of having been forged, and we unhesitatingly conclude that, had Exhibit 4 been received; there is no reasonable likelihood or probability that the verdict would have been different. We are convinced from an examination of the record that justice has been done between the parties; hence the verdict ought not to be disturbed. 2 Thomp. Trials, 2402, 2403.

The remaining assignments are wholly devoid of merit, and require no discussion. The instructions of the court to the jury were very full and fair, and we think stated the law correctly.

One other matter remains to be noticed. While not mentioned in the printed brief, the distinguished counsel who argued the case orally for appellant in this court earnestly contended that, if any conversion of the grain was proved, it was shown to have occurred in the latter part of October, and not in September, and that the evidence wholly fails to establish the highest market price of such grain thereafter, but merely tends, at the most, to show that the highest market price thereof was some time in October. A sufficient answer to such contention is the fact that such question was not raised in the court below. Furthermore, the learned trial court expressly instructed the jury that such conversion took place, if at all, on September 25, 1907, and no exception was saved thereto. Such instruction, therefore, whether right or wrong, is now the law of the case.

We find no prejudicial error in the record. The judgment and order are accordingly affirmed.