[File No. 6057.]

BOARD OF EDUCATION OF THE CITY OF EDMORE, OF THE STATE OF NORTH DAKOTA, a Municipal Corporation, Respondent, v. JOHN R. ANDERSON, J. W. Wright, Hellek Hellekson, James Connolly and E. N. Botton. E. N. BOTTON, Appellant.

(243 N. W. 817.)

Opinion filed July 25, 1932.

*George A. Bangs,* for appellant.
*Traynor & Traynor,* for respondent.

BIRDZELL, J. This is an action upon a depositary bond. Three of the defendants, Wright, Hellekson and Botton, answered denying that they had signed the bond. The action was tried before the district court without a jury and resulted in a judgment in favor of the plaintiff against all the defendants in the total sum of $12,094.02, together with certain interest and costs. The defendant Botton moved for a new trial and he alone appeals to this court from the judgment and from the order denying the motion. The principal contention on the appeal is that error was committed in the reception of evidence which the record shows entered into the consideration of the court in determining the principal issue and that on this account a new trial should be had.

The evidence with respect to the execution of the bond in suit by Botton is substantially as follows: Peter Seterdahl, testifying by deposition, said that he was cashier of the First National Bank of Edmore from the fall of 1926 until the bank closed on March 7, 1930. During that time E. N. Botton had no connection with the bank other than that of carrying an account there. The witness frequently had occasion to pass upon his signature on checks. When asked whether he was sufficiently familiar with the signature of Botton to give an opinion as to whether or not the signature on the bond was his genuine signature he answered affirmatively and stated that in his opinion the signature on the bond was the genuine signature of Botton, the appellant. He did not know whether he was present at the time the bond was signed or acknowledged.

George A. Johnson, the notary, identified his own signature on the notarial acknowledgment and the justification. He testified that he was familiar with the signatures of Wright, Hellekson and Botton; that he had seen them at different times sign their names and had done business with them. He was asked specifically concerning Wright's signature and answered, "Well, I wouldn't say it is the genuine signature, but I think it is. In my opinion it is." He did not recall the circumstances of the execution of the bond, nor the occasion for his taking the acknowledgment or justification. When asked "You know

that you did act as notary in connection with it?" he answered "I see that is my signature, and that is my name." When asked as to the genuineness of Hellekson's signature he said "I would say it is in my opinion." When asked his opinion as to the genuineness of Botton's signature upon the bond he responded, "I would say it is." On cross-examination he was asked, "You don't claim, do you Mr. Johnson, that these people came before you and signed in your presence?" he answered, "I don't know, I don't recall the incident at all."

The defendant Anderson testified that he was connected with the First National Bank of Edmore as an officer for many years; that he did not dispute his signatures on the bond. When asked "Do you know anything else about the execution of that bond other than having signed it?" he answered "No, sir." On cross-examination he stated that he remembered signing it in the bank.

The defendant Wright testified positively that he did not sign the bond; that it was not his writing. He admitted signing another bond running to the Ramsey county treasurer for $16,800, which bond was thereupon offered in evidence for purposes of comparison of signatures. He denied he had ever gone before a notary public to acknowledge his signature on the bond in question or that he had ever had anything to do with it.

The defendant Hellekson when asked if it was his signature upon the bond said, "I can't remember I signed it. It looks like my signature. I can't remember. Q. The question is, did you or did you not sign it? A. I hardly think it." He remembered signing county bonds. He did not go before a notary to acknowledge the bond. He was sure of it. On cross-examination he said he could not remember signing the bond in question but he wouldn't swear that he did not.

The defendant and appellant Botton testified that he never went before Johnson and acknowledged the signing of a bond or the justification; that he did not sign the bond. He was asked "You feel certain now that you never did sign such a bond" and he answered "Yes." On cross-examination he was shown the county bond for $16,800 and he stated that the signature thereon purporting to be his was not his signature; that he had not signed any bond to Ramsey county; that he never signed any bonds for the First National Bank of Edmore and was not an officer of the bank. When asked "Well now, why do you say

that is not your signature on Exhibit A (the bond in question), why do you say that is not your signature?" he answered "Because I couldn't swear that I did sign it. Q. Just because you don't remember signing it? A. Yes. Q. It looks like your signature doesn't it? A. Somewhat. Q. And this signature on Exhibit D (the county bond) looks like your signature, too? A. Some. Q. And the only reason you say you did not sign it is you don't remember signing it? A. Well, that is one of the reasons. Q. What other reason is there then why you say you did not sign it? A. Because I never sign any bonds for anybody in the world. Q. Never sign any bonds for anybody in the world? A. No, sir."

T. E. Goulding testified that he was clerk of the Edmore School District; that he had seen Botton's signature a good many times. He could not say that he had seen him write his name. He had received probably a half dozen checks from him during the year for coal. When asked his opinion as to his signature on Exhibit A he said, "I couldn't say it was the genuine signature of Mr. Botton, but to look at it hurriedly I would think it was his signature. Q. Is it your opinion it is the signature of E. N. Botton? A. I don't like to answer that, Mr. Traynor, because I don't know. It is very much like his signature, but I wouldn't want to say it is."

Over objection that the evidence was incompetent as relating to a proposed compromise, the defendant Botton was asked concerning statements made by him to the president of the school board relating to settling the claimed liability. He could not say whether or not he had told the president of the board that he did not sign the bond. He "hadn't looked it up at the time." He looked it up in the summer of 1930 and found out his name appeared on it, but he didn't know it before. He denied telling Wing, the president of the board, that he wanted "to settle up and be done with it." Wing testified, without any objection that his testimony was incompetent as relating to a compromise, that he had proposed to Botton the signing of some extension agreements affecting the two local banks, in connection with which Wing had stated to Botton that he should sign them because he was the most substantial one on the bonds and that Botton said "Well, I am kind of slow getting on to that, but maybe that will be

the best thing. . . . Probably it would be best if I could. It would be the best thing if I could pay my share now."

In the first memorandum opinion the trial judge said: "It is conceded that the said defendants did not personally appear before the notary whose signature is attached to the certificate of acknowledgment and certificate of justification. However, this does not invalidate the bonds. . . . I am satisfied from a consideration of all the evidence in the case that the signatures of these defendants to the bond given by the First National Bank of Edmore are the genuine signatures of the defendants J. W. Wright, Hellek Hellekson and E. N. Botton. These parties have evidently forgotten that they have signed these bonds. At any rate no question was raised by either of these defendants as to his signature before these actions were commenced. *A comparison of their signatures on the bond involved with their signatures on the bonds of the First National Bank, to Ramsey County, shows conclusively that their signatures to the bond in question are genuine and not forgeries."*

In a further memorandum opinion written in deciding a motion for a new trial, the trial court, after referring to the testimony abstracted above, said:

"In addition to the foregoing the defendant, Botton, at the time of the trial was requested to write his name four or five times on a sheet of paper, which he did, and which was offered and received in evidence as Exhibit H.

"A comparison of the signatures on Exhibit H with the name of E. N. Botton on the bond, can lead to no other conclusion than that the signature on the bond is the genuine signature of E. N. Botton. There are certain peculiarities in the penmanship, and certain traits and characteristics in the signatures on the bond and the signatures as written by Mr. Botton on Exhibit H, which are common to both, and which can be easily detected by the ordinary layman.

"Exhibit D, being a bond signed by J. W. Wright, Hellek Hellekson and E. N. Botton, to the County of Ramsey, to secure the deposit of county funds, was offered in evidence for the purpose of comparison of the signatures of J. W. Wright, as J. W. Wright had admitted his signature upon Exhibit D. It was introduced in evidence for the purpose of making a comparison of the signatures of J. W. Wright.

In my memo opinion prepared at the time I decided this case, I referred to this exhibit relative to the signatures of all of the defendants who denied their signatures on the bond involved in this lawsuit. It was not proper to use this as a comparison as to the signature of E. N. Botton, inasmuch as he did not admit his signature on Exhibit D. However, I am of the opinion that the signature of E. N. Botton is established in this case, without making any reference to the signature on Exhibit D.

"After considering the matter I am convinced that the signature of the defendant, E. N. Botton, to the bond involved in this suit, is is genuine signature, and the motion for new trial is denied."

The burden was upon the plaintiff to prove the execution of the bond. The defendant denied his signature. The strongest evidence to prove that he signed it is contained in the deposition of Seterdahl and is expressed as the opinion of such witness that the signature is Botton's genuine signature. This opinion is based upon such familiarity as he had gained with Botton's signature by having seen it upon checks. This was competent. 3 Jones, Commentaries on Ev. §§ 1284 and 1288; 1 Wigmore, Ev. 2d ed. § 698.

Very little weight, if any, should be given the testimony of the notary for two reasons: First, the record shows rather conclusively that those whose acknowledgment he purports to have taken upon the instrument in question did not appear before him; and, second, because in testifying to the signature of Wright, based upon a business knowledge of his signature, he wouldn't say that the signature was genuine but he did say that in his opinion it was genuine, and this qualification is substantially repeated in testifying as to Botton's signature. In considering the effect of such testimony, it must be borne in mind that on this record it appears he had made a false notarial certificate. The testimony of a notary as to genuineness of a signature which purports to have been acknowledged before him, should not be given material weight where it appears as a fact that it was not signed before him and where he can not swear positively to the signature.

The sample signatures of Botton written in court and introduced for purposes of comparison can not be regarded as highly persuasive to the court as a layman and no expert was called to aid the court in making the comparison.

Goulding's testimony is of no substantial value in view of the manner in which he qualified it. He frankly stated he could not say it was Botton's genuine signature, but that to look at it hurriedly he would think it was his signature, and he testified he did not know. The evidence, by way of admissions, is weak. There is no admission of signing, and in so far as a damaging inference may be drawn from the mere failure to deny the signature at the first opportunity and from an expression looking towards settlement the court should avoid drawing it in conformity with the policy which encourages compromises.

The trial court in first deciding the case attached importance to Botton's signature on the county bond. This bond was not admissible as to Botton and his signature thereon should not have been considered at all. Stutsman County Bank v. Jones, 36 N. D. 531, 162 N. W. 402. There is no testimony in the record from any person who was present when Botton executed the bond, and no reason appears why such testimony was not produced. In view of the condition of the evidence, it was clearly prejudicial error to consider the signature on the county bond in determining the genuineness of Botton's signature on the bond in question. It can not be questioned that it would have been prejudicial error to have submitted this evidence to a jury, and where the record shows that the court actually considered it important the effect is the same. While the rule is that in a case tried to a court without a jury the court is presumed to have considered only competent evidence in arriving at a verdict, this presumption can not survive the affirmative statement in the court's opinion showing consideration of such incompetent evidence. This, in effect, impeaches the verdict or finding for the error anterior thereto. The error is not cured by the subsequent statement of the court to the effect that the same result would have been reached without considering such incompetent evidence. This is a jury case tried to the court, and we can not try it anew on the whole record. Had the defendant appealed from the judgment without moving for a new trial, a reversal would have resulted necessarily. The ruling of the trial court on the motion only makes an error appear to have been harmless after a record has been made which demonstrates its prejudicial character.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and BURKE, JJ., concur.