Carol WILLISTON, Executrix of the Estate of Thomas A. Williston, deceased, Appellant,

v.

HERITAGE SUPPLY COMPANY, Inc., Appellee.

No. 2417.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 24, 1959.

Decided Nov. 4, 1959.

William H. Clarke, Washington, D. C., with whom Charles L. Norris, Washington, D. C., was on the brief, for appellant.

J. Mitchell Brown, Washington, D. C., with whom Hudson & Creyke, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, HOOD, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

HOOD, Associate Judge.

Dr. Williston, now represented by his executrix, owned some property in Maryland improved by a building known as the Williston Building. A man named Vance, who had some business associations with Dr. Williston, operated a business in the Williston Building. In September 1953 Vance and a representative of Heritage Supply Company met with the doctor at his office and had some discussion about the placing of an FHA Title I loan on the property for the purpose of making improvements to it. Heritage was to process the loan and receive a part of the proceeds to pay for supplies to be furnished by it, and the remainder was to be paid to Robinson and Hass, a lumber company, for supplies furnished by it.

The interview between the doctor, Vance and Heritage's representative appears to have been brief, with Vance doing most of the talking. The doctor did not commit himself and signed nothing at the meeting, but a promissory note payable to Heritage in the sum of $2,874.50 and an FHA Title I credit application, fully completed except for signatures, were left at his office. In some manner, not clearly disclosed by the record, the note and application were later returned to Heritage bearing what purported to be Dr. Williston's signatures. Heritage endorsed the note to Columbia Savings and Loan Association, and received a check for the proceeds. After deducting the amount due it, Heritage then issued its check for $1,917.58 to the order of Dr. Williston and Robinson and Hass. This check bearing the purported endorsements of Dr. Williston and the other payees was deposited and paid.

Promptly after acquiring the note the loan association wrote to Dr. Williston, advising him it had purchased the note and enclosing a monthly payment book. Payments on the note were made by someone until the amount was reduced to $1,507.36. When payments ceased, the association wrote to Dr. Williston and he went to its office and stated he was in no way involved in the transaction, denied that the signature on the note was his signature, and gave an affidavit to that effect. The association then demanded that Heritage pay the note, and it paid the balance with interest and then brought this action against Dr. Williston for the amount it had paid.

Dr. Williston died before trial but at trial portions of his deposition taken in connection with this and other pending actions were read into evidence as a part of Heritage's case. Vance was subpoenaed as a witness for the executrix but did not appear, and no evidence was offered by the defense.

At the close of the evidence the trial court, sitting without a jury, found that Vance had signed Williston's name to the credit application and note, but found that Williston did endorse the check issued by Heritage to Williston and the lumber company. The court also found that Williston's name on the note was not made "without the authority" of Williston. On these findings the court ruled in favor of Heritage. Williston's executrix has appealed.

■ Appellant argues that it was error to receive in evidence the documents purportedly signed by Williston without first requiring proof of the genuineness of the signatures. We see no merit to this contention. The papers were admitted as disputed documents and it was necessary that they be received in order to determine the question of their genuineness.

■■ The next contention is that the trial court was in error in holding that the endorsement on the check of Heritage was the genuine signature of Williston. The trial court had before it the admittedly genuine signature of Williston on his affidavit, and the court apparently reached the conclusion that the signature on the check was genuine by comparing it with the signature on the affidavit. Appellant argues that the trial could could not do this without the aid of testimony from an expert on handwriting. We do not agree. The modern rule is that a court or jury may compare a disputed signature with a genuine signature for the purpose of determining the genuineness of the former.[1] If such comparison is the only proof offered, it of course may not satisfy the trier of the facts, but if it does, a finding based thereon cannot be said to be without substantial support.

■ Other claims of error are addressed to the finding that, although Vance signed Williston's name to the note, Vance did not act without authority of Williston and that Williston was therefore liable on the note. In making this finding the court was entitled to consider the following. Williston, in his deposition, admitted that Vance and Burns, Heritage's representative, came to his office and a discussion ensued concerning the construction proposed to be done, and that Vance's "whole conversation was beamed to let this man think I knew all about it and was interested in his venture"; and that

he (Williston) said nothing to the contrary although he knew Vance was "one of the slickest operators." Williston further admitted that the question of an FHA loan may have been discussed, and that he probably said, "Well, I will talk to Mr. Vance about this." He further admitted he had received the payment book from the loan association and that it was quite possible the book was accompanied by the letter notifying him that the association had purchased his note from Heritage and telling him when and where to make his monthly payments; and that he took no steps to notify the association that he had executed no such note. The foregoing, when added to the fact, as found by the court, that Williston had actually endorsed Heritage's check, lends support to the conclusion that Williston was aware of Vance's actions and impliedly authorized them.

Other claims of error require no discussion.

Affirmed.

---

1. See 20 Am.Jur., Evidence, § 742; 32 C.J.S. Evidence § 612. See also 28 U.S. C.A. § 1731, which provides: "The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person."