**U. S. INDUSTRIES, INC., a Delaware Corporation, Plaintiff and Appellant,**

v.

**E. O. BORR, Defendant and Respondent.**

**No. 8361.**

Supreme Court of North Dakota.

March 29, 1968.

Richard E. Herr, Wishek, for plaintiff and appellant.

F. C. Rohrich, Linton, for defendant and respondent.

ERICKSTAD, Judge (on reassignment).

The complaint in this case alleged two causes of action.

The first alleged that the defendant, E. O. Borr, entered into a retail installment contract with Archie Ryckman by which Mr. Ryckman promised to pay to Mr. Borr a certain sum of money in annual installments and agreed that, upon default, all of the unpaid installments, at the seller's option, would immediately become due and payable; that Mr. Borr assigned that contract to the plaintiff, U. S. Industries, Inc. (which we shall hereafter refer to as the corporation), and that by the terms of that assignment Mr. Borr guaranteed the payment of the contract; that Mr. Ryckman defaulted in

the payments; and that a demand for the payment of the balance of the contract has been made of both Mr. Ryckman and Mr. Borr, but that neither has paid the balance of the contract. The prayer for relief asked for judgment against Mr. Borr in the amount of the balance due on the contract plus interest.

The second cause of action is similar to the first except that it arises from an installment contract with one Leon J. Korbyn.

In the third amended answer Mr. Borr alleged that he entered into the contracts as an agent for the corporation; he denied that he executed any assignment to the corporation and denied any liability to the corporation. The answer further alleged that Mr. Borr would not have signed the contracts had he not been induced through fraud to sign them. Dismissal of both causes of action was requested.

When the case came on for trial the corporation called Mr. Borr for cross-examination under the statute. He admitted that the signatures affixed to plaintiff's exhibits 1 and 2 (the conditional sales contracts) and the signatures affixed to plaintiff's exhibits 7, 8, 9, 10, and 11 (the letters which he had written to various representatives of the corporation) were his signatures. The court received those exhibits in evidence without objection. However, Mr. Borr denied that his signature was affixed to plaintiff's exhibits 3 and 4, which are the alleged assignments. Accordingly, when those exhibits were offered and Mr. Borr objected to their receipt in evidence upon the ground that no identification of the signatures had been made and thus that there was not proper foundation, the court refused to receive them, saying that the court was not an expert and therefore could not discern whether the questioned signatures on exhibits 3 and 4 were authentic.

At this point the plaintiff rested, and Mr. Borr moved for a dismissal of the complaint. The trial court granted the motion for dismissal, and it is from the judgment entered on the order granting the dismissal that this appeal is taken.

The court erred in refusing to admit in evidence the questioned documents, so that the signatures thereon could be compared with the genuine signatures on the documents admitted in evidence, to determine the authenticity of the questioned signatures. In so holding we do not attempt to determine whether the corporation established by a preponderance of the evidence that the signatures on exhibits 3 and 4 were authentic; we believe that determination to be the responsibility in the first instance of the trial court.

Pertinent is N.D.C.C. § 31–08–02.1, which reads:

Handwriting admissible in evidence for comparison.—The handwriting of any person shall be competent evidence for the purpose of furnishing a standard of comparison, in all cases wherein the genuineness of a writing is questioned or the identity of the writer is sought to be established.

North Dakota Century Code.

In considering a motion for a new trial in its memorandum opinion, the trial court, among other things, reviewed the common law of England on this subject, as well as three decisions of this court: Board of Education of City of Edmore v. Anderson, 62 N.D. 364, 243 N.W. 817 (1932); Stutsman County Bank v. Jones, 36 N.D. 531, 162 N.W. 402 (1917); and Cochrane v. National Elevator Co., 20 N.D. 169, 127 N.W. 725 (1910).

■ There is no common law in any case in which the law is declared by the Code. N.D.C.C. § 1–01–06. Therefore, notwithstanding what may have been said to the contrary in those decisions rendered before 1951, the enactment date of § 31–08–02.1, we conclude that the provisions of that statute must prevail.

■ Our view is that § 31–08–02.1 made it mandatory that the trial court admit

the questioned documents in evidence for the purpose of comparing the signatures thereon with the genuine signatures admitted in evidence. Young v. Wheby, 126 W. Va. 741, 30 S.E.2d 6, at 9, 154 A.L.R. 919. The statute contains no qualification: it does not require that an expert be first called to determine the genuineness of the questioned signatures before they may be admitted in evidence for purposes of comparison.

■ Without any intention to limit the application of § 31–08–02.1, we point out that even at common law, if the document acknowledged to be in the handwriting of the party or to have been subscribed by him was in evidence for some other purpose in the cause, the questioned document could be compared with it by the jury.

In Hickory v. United States, 151 U.S. 303, 305, 14 S.Ct. 334, 335, 38 L.Ed. 170 (1894), the court said:

> According to the general rule of the common law, the genuineness of disputed handwriting could not be determined by the court and jury by comparing it with other handwriting of the party, but among the exceptions to the rule was that if the paper admitted to be in the handwriting of the party, or to have been subscribed by him, was in evidence for some other purpose in the cause, the paper in question might be compared with it by the jury, (Moore v. U. S., 91 U.S. [270] 271 [23 L.Ed. 346]; Rogers v. Ritter, 12 Wall. 317 [20 L.Ed. 417];) and this with or without the aid of witnesses, (1 Greenl.Ev. § 578.)

In the instant case it could be said that the signatures on exhibits 1 and 2 were in evidence for some other purpose in the cause.

An interesting discussion of the common law is set forth in the annotation to University of Illinois v. Spalding, 71 N.H. 163, 51 A. 731, 62 L.R.A. 817 (1901), a part of which reads as follows:

It will be well, then, first to notice carefully what are the several established modes of proving the origin of disputed handwriting. Such will be found to be seven in number; and of the seven two are directed simply to the act of writing, the other five being directed to the character of the writing produced; the first two consist of direct evidence, from knowledge, and the others consist of indirect evidence, from opinion. They are:

(I.)  Proof of admission of the act.

(II.)  Proof by witnesses who saw the pen form the letters.

(III.) Proof by witnesses who know the handwriting of the author from having seen him write.

(IV.)  Proof by witnesses who know the handwriting from correspondence with the author, on which he has acted.

(V.)  Proof by witnesses who know the handwriting from familiarity with authentic documents.

(VI.)  Comparison by witnesses in court with genuine specimens of the handwriting of the same person.

(VII.)  *Comparison by the court or jury with the same genuine specimens.* [Emphasis added.]

With the last two methods of proof only, this note is directly concerned; and it becomes necessary, then, to determine what is meant by "comparison of handwriting."

As was said by Greenleaf (Evidence, Sec. 576), a statement quoted scores of times by as many courts: "All evidence of handwriting, except where the witness saw the document written, is, in its nature, comparison. It is the belief which a witness entertains, upon comparing the writing in question with its exemplar in his mind, derived from some previous knowledge." With the admissibility in general of this kind of "comparison" (that is, with a mental exemplar only),

which, for the sake of brevity, will here be called pseudo-comparison, we are at present not concerned as a part of the subject annotated; but because, in the study of the historical growth of evidence by the real comparison of hands, the two kinds of evidence or methods of proof of handwriting are found to be greatly confused and entangled, especially in the earlier times, in the minds of the judges and the legislature, it is impossible wholly to ignore the simpler method of proof in the treatment of the other. By "comparison of handwriting" is now universally meant the actual juxtaposition in court, either by the jury (or a court in its place), or by witnesses, of a writing whose authorship is unknown, with another writing admitted or proved to have been written by a person alleged and denied to have written the first,—of course, with the object of determining the genuineness of the disputed writing, or, looking at the matter in a different way, the identity of its author.

It is proper to remark in this place that, while the most remote and impalpable knowledge of a handwriting has been considered in England, from early times, sufficient to allow a witness to express his opinion of the authorship of a disputed writing, even if that knowledge is derived merely from seeing him write once (and that nineteen years before the trial, as in Horne Tooke's Case [1794] 25 How.St. Tr. 1), evidence which is now considered of far greater probative value, being derived from a physical juxtaposition and comparison in court with approved genuine standards, after an interesting and difficult struggle for existence, was, in England (with two excepted cases *ex necessitate*), finally judicially abolished, only to be brought to life by statute, however, some twenty years later in the enactment of the common law procedure act of 1854. This judicial destruction of an important and invaluable class of evidence was accomplished in spite of the apparent fact that *"it is * * * more satisfactory to submit a genuine paper as a standard, and let the jury compare that with the paper in question and judge of its similitude, than the evidence, continually received, of allowing a witness, who has seen the party write once, to compare the disputed paper with the feeble impression and transient view the writing may have made in his memory."* Farmers' Bank v. Whitehill (1823) 10 Serg. & R. [Pa.] 110. [Emphasis added.]

University of Illinois v. Spalding, 71 N.H. 163, 51 A. 731, 62 L.R.A. 817–818 (1901).

We believe that it was to permit the receipt in evidence of what the writers described in that annotation as "an important and invaluable class of evidence" that Sec. 31–08–02.1 was enacted by our legislature.

In *University of Illinois* the New Hampshire court said:

It may be safely stated as a fundamental proposition that, on the question whether a given signature is in the handwriting of a particular person, comparison of the disputed signature with other writings of that person known to be genuine is a rational method of investigation, and that similarities and dissimilarities thus disclosed are probative, and as satisfactory in the instinctive search for truth as opinion formed by the unquestioned method of comparing the signature with an exemplar of the person's handwriting, existing in the mind, and derived from direct acquaintance, however little, with the party's handwriting. The objections upon which the common-law rule of exclusion is founded are threefold: (1) Ignorance of jurors, and their inability to make intelligent comparison; (2) danger of unfairness and fraud in the selection of specimens, with no sufficient opportunity for the opposing party to investigate and expose; (3) collateral issues as to the genuiness of the specimens presented. (1) The first objection, however justified by the state of English society when it was originally announced, has no weight at the present time in a jurisdiction where

intelligence and education are general, and needs no further comment. (2) Since the right to produce specimens under a rule allowing comparison is equally open to both parties, and the specimens are all subject to examination and cross-examination, the opportunity for advantage from unfair selections is too slight to furnish reason for closing the door against this important avenue of investigation. (3) The third objection—that to permit comparison with specimens not otherwise in evidence, and admitted for the mere purpose of comparison, would introduce collateral issues, and confuse and distract the jury—is, when applied to specimens neither admitted by the parties nor found by the court to be genuine, firmly grounded in reason and authority. * * *

University of Illinois v. Spalding, supra, 71 N.H. 163, 51 A. 731, 733, 62 L.R.A. 817, 825–826.

As noted, only the third objection had merit. It could not apply in the instant case, as the specimens contained in exhibits 1, 2, 7, 8, 9, 10, and 11 were acknowledged as genuine.

In support of the position taken, we refer those interested to the more recent decisions of In re Johnson's Estate, 200 Cal. 299, 252 P. 1049 (1927); Brueckner v. City of Pittsburgh, 368 Pa. 554, 84 A.2d 197 (1951); and Mitchell v. Mitchell, 24 Wash.2d 701, 166 P.2d 938 (1946).

In passing, it should be noted that on February 26, 1913, a federal statute was enacted on this subject. It reads:

[United States courts—admitted handwriting allowed as evidence.] That in any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness.

37 Stat. 683.

That statute was amended in 1948. It now reads:

The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person.

28 U.S.C.A. Sec. 1731.

We see from the reviser's note that the words "as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding" were omitted as superfluous. 28 U.S.C.A. Sec. 1731.

The federal statute as amended in 1948 closely resembles Sec. 31–08–02.1 of our code. A decision construing the federal statute is Strauss v. United States, 311 F.2d 926 (5th Cir. 1963), a criminal case in which the defendant unsuccessfully appealed his conviction of conspiracy to transfer and conceal assets of a corporation in contemplation of a bankruptcy proceeding by or against it. In issue was the genuineness of certain signatures. The court, citing *Hickory* and other cases, said:

It is elementary, putting aside the expert testimony of genuineness of the signatures, that the jury was entitled to draw their own conclusion as to the genuineness of the signature on the various exhibits by a comparison with the admitted signature of appellant on Government Exhibit 9 * * *.

Strauss v. United States, supra, 932.

The Municipal Court of Appeals for the District of Columbia, in 1959, in answering the question with which we are faced, said:

The modern rule is that a court or jury may compare a disputed signature with a genuine signature for the purpose of determining the genuineness of the former [without first requiring proof of the gen-

uineness of the questioned signatures]. If such comparison is the only proof offered, it of course may not satisfy the trier of the facts, but if it does, a finding based thereon cannot be said to be without substantial support.

Williston v. Heritage Supply Co., 155 A. 2d 253, 255 (D.C.Mun.Ct.App.1959).

See also Desimone v. United States, 227 F. 2d 864 (9th Cir. 1955).

■ The next point raised by the corporation is that Mr. Borr, in answer to requests that he admit that he signed what has now been described on appeal as exhibits 3 and 4, said: "To the best of the defendant's knowledge, the defendant cannot remember signing any assignment."

The crux of the corporation's complaint is that the trial court permitted Mr. Borr to amend his admissions. Mr. Borr amended them, so that in response to the question whether he signed the Ryckman assignment, he answered, "The plaintiff should know if he signed an assignment"; and in response to requests that he admit that he signed the assignment of the Korbyn contract, he changed his answer to read, "False."

The corporation contends that this constituted a violation of N.D.R.Civ.P. rule 36(a), which reads:

RULE 36

ADMISSION OF FACTS AND OF GENUINENESS OF DOCUMENTS

(a) Request for admission. After commencement of an action a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth in the request. If a plaintiff desires to serve a request within 10 days after commencement of the action leave of court, granted with or without notice, must be obtained. Copies of the document shall be served with the request unless copies have already been furnished. Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder. If the request is refused because of lack of information or knowledge upon the part of the party to whom the request is directed, he shall also show in his sworn statement that the means of securing the information or knowledge are not reasonably within his power.

North Dakota Rules of Civil Procedure.

It is the corporation's contention that the original answer was not a specific denial, and that therefore it constituted an admission. It points out that, in making that answer, Mr. Borr did not comply with rule 36(a) in that he did not show in his sworn statement that the means of securing the information or knowledge were not reasonably within his power.

The corporation further contends that the court permitted Mr. Borr to amend his answer to the request for admissions without showing justifiable cause. In that respect we note that Mr. Borr stated in his motion for leave to amend his answer to the request for admissions that he was making that motion because additional information had been received since the original answer to the complaint. This was never further elaborated, but the trial court granted the motion. We think what was said in United States v. Lemons, a decision of the federal district court for the Western District of Arkansas, is pertinent here:

In view of the foregoing authorities and the general purpose of Rule 36, the Court is of the opinion that sworn admissions are not absolutely and conclusively binding upon a party and do not estop the party from denying their truth. However, if a party desires to deny the truth of his admission or admissions, the burden rests upon him to explain the reason said admission was false and to establish that his subsequent testimony, in contradiction of the admission, is in fact the truth. The showing in this regard must be clear and convincing. Otherwise, the salutary purpose of the Rule might be circumvented.

Ordinarily, the best practice—when it is learned that a party's admission is untrue—would be to request permission of the Court to execute amended or supplemental admissions in accordance with the actual truth. The motion should contain a statement of the reasons for the change, and if the Court feels that justice would be served by permitting the amendment or substitution it should grant the party's request. If this procedure is followed, the opposing party will not be subject to surprise. On the other hand, if a party were to wait until the trial of a case before seeking to deny admissions he had made, it would require exceptional circumstances before the Court would be justified in permitting him to deny said

admissions. The reason for this is that the opposing party has the right to rely on said admissions as being true, and might not have witnesses available (whose attendance could have been secured if the party had received notice of the proposed repudiation of the admissions) to prove the facts admitted in said admissions. In such event the said opposing party would be greatly prejudiced if the party making the admissions were permitted to deny them during the course of the trial.

United States v. Lemons, 125 F.Supp. 686, 689–690 (W.D.Ark.1954).

Although it is obvious from what has been said herein that Mr. Borr did not comply with rule 36(a) in answering the request for admissions and that he made very little, if any, showing in justification for seeking to amend his answers—and thus, of course, we do not commend this as an example of compliance with the rule—we do find that the corporation was not prejudiced therefrom in this case. The original answers to the request for admissions were served on the corporation on October 28, 1965. As of April 11, 1966, the time of the service of the third amended answer, the corporation knew that Mr. Borr denied that he signed exhibits 3 and 4. The trial did not commence until May 23, 1966. The corporation therefore was not met with surprise during the trial and thus cannot argue that it was deprived of securing witnesses to counter the new position created by the amendment to the answers to the request for admissions.

Although the corporation would have this court now attempt to predetermine the sufficiency of Mr. Borr's defense, which includes the defense of fraud, without giving him another opportunity to submit evidence in support thereof, and would also have us weigh the corporation's evidence and determine the authenticity of the signatures on exhibits 3 and 4, believing that this would induce us to decide in its favor, we are convinced that this is not our prerogative. We believe that to accomplish justice it is necessary that a new trial be granted. There-

fore, under the authority given us pursuant to N.D.C.C. § 28–27–32, the judgment is reversed and a new trial is granted.

STRUTZ and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.

TEIGEN, Chief Justice (concurring specially).

I concur with the majority in their holding wherein they stated it was error for the court to refuse to admit in evidence the two assignments identified as Exhibits 3 and 4, but I do not agree that Section 31–08–02.1, N.D.C.C., required that they be admitted in evidence. The statute does not so state. The statute merely provides, as a rule of evidence, that where the genuineness of a writing is questioned, or where the identity of a writer is sought to be established by comparison of handwriting, that the handwriting of the person in question shall be competent evidence for the purpose of furnishing the standard. The statute itself does not provide that the questioned writing shall be admitted without foundation. In the instant case, a summary judgment proceeding wherein summary judgment was denied, the court determined that some material facts were found to exist without substantial controversy and which material facts were actually and in good faith controverted. The court found that the defendant signed the installment sales contracts; that the plaintiff, at the time of the commencement of this suit, was the owner of both of said contracts; that each of the purchasers under the installment sales contracts were in default; that demand had been made upon them and upon the defendant as the alleged guarantor but that the defendant had paid no part thereof and denied liability. Therefore, the court further found that the facts, which are actually and in good faith controverted, resolve the questions to be determined upon the trial which questions are as follows:

1. Did the defendant sign the installment sales contracts as owner or as agent for the plaintiff?

2. Was the defendant enticed by fraud and misrepresentation to enter into the installment sales contracts?

3. Did the defendant sign the assignments of the installment sales contracts?

When the case came on for trial the defendant was called for cross-examination and admitted his signature on Exhibits 1 and 2, which were the two installment sales contracts. He also admitted his signature on several other documents was genuine. These exhibits were offered and received in evidence. The two assignments were marked as Exhibits 3 and 4, and after defendant had denied that the signatures contained thereon were his, they were offered in evidence without further foundation.

The question with which we are concerned involves the admissibility of these exhibits in evidence. It is clear from the contents of these exhibits that they are assignments of the installment sales contracts received in evidence as Exhibits 1 and 2. They also contain the guaranty upon which the plaintiff seeks to recover. The assignments are a necessary element of the plaintiff's claim.

As a general rule, both at common law and under the statutes of many jurisdictions before private writings or documents are receivable in evidence, their due and valid execution or their genuineness and authenticity must be established. 32 C.J.S. Evidence § 733. But, although the rule requires proof of genuineness and authenticity before a document or private writing can be admitted in evidence, the objection to the absence of such proof may be overcome by submitting it for the purpose of determining its genuineness by comparison with a genuine signature which has been admitted.

In view of Section 31–08–02.1, N.D.C.C., the admission in evidence of the admitted handwritten signatures was mandatory as a standard of comparison in a case wherein the genuineness of a writing is questioned or the identity of the writer is sought to be established. After the admission in evidence of the admitted signatures the disputed writing could be admitted for the purpose of its being compared with the genuine. This was the holding of Young v. Wheby, 126 W.Va. 741, 30 S.E.2d 6, 154 A.L.R. 919, cited by the majority. There are several cases of similar import. In Castor v. Bernstein, 2 Cal.App. 703, 84 P. 244, the California court held that a disputed document was entitled to admission in evidence without proof by means other than a comparison by the jury with the genuine signature on an admitted document. The court reasoned that, whether the signature on the disputed document was genuine or not, was a question of fact to be determined by the jury and not by the judge and that the judge could not, by refusing to allow the disputed document to be submitted to the jury, preclude the party offering it from having the jury determine that question of fact.

In Armstrong v. Kline, 64 Cal.App.2d 704, 149 P.2d 445, the court held that certain disputed cancelled checks were admissible in evidence, even though the payee's signature on the back of the checks was not shown to be genuine in view of the fact that the payee's signature was in evidence on another instrument, since the jury could have used the known signature for the purpose of comparison.

In Bressler v. Bressler, 155 A.2d 255 (D. C.Mun.App.1959), the court discussing the question said it saw no merit to a contention that it was error to receive in evidence, documents purportedly signed by another without first requiring proof of the genuineness of the signature where the disputed documents were admitted in order to determine the question of the genuineness by comparison with genuine writings admitted in evidence.

In Oaks Fire Company v. Herbert, 389 Pa. 357, 132 A.2d 193, the Pennsylvania court held that two receipts were admissible in evidence, although the signatures thereon were not properly authenticated, where there was a valid notarized assignment of mortgage in evidence bearing the signature of the one who purportedly executed the receipts. This case was tried to the court without a jury. The Supreme Court held that the trial court, acting in its capacity as a jury, had the power to compare the signatures on the receipts in question with the valid signature on the mortgage assignment and to determine, without the aid of expert testimony, the authenticity of the signatures on the receipts.

In Porter v. Rogers, 293 S.W. 577 (Tex. Civ.App.1927), it was held that, although as a general rule a written document is not admissible in evidence unless it is shown to have been executed by the party charged therewith, nevertheless, where there has been established by the evidence that there is a reasonable probability that the paper offered in evidence is what it purports to be, it then becomes a question of fact to be determined by the jury, and whether it is sufficient evidence to raise the issue as to whether the unsigned instrument was approved by the parties charged therewith or expresses the agreement made by them, the instrument is admissible in evidence as a circumstance tending to prove the contract or agreement.

Therefore, although it is the general rule that before a private writing may be received in evidence it is necessary to establish, preliminary to its admission, its execution; that nevertheless where there is reasonable probability established that the document is what it purports to be even though its execution is not established by evidence but is disputed and there is evidence of a genuine signature admitted with which the purported signature contained on the disputed document may be compared, the question becomes one for the finder of the facts and the document should go before it with the evidence impeaching its genuineness for its decision. This case being tried to the court

without a jury, it was for the judge to make the comparison and Exhibits 3 and 4 should have been admitted in evidence for that purpose.

For the reasons set forth herein, I think that Syllabus number 3 of the majority opinion should read:

"Where assignor on installment sales contract brought action against the assignee to recover on the guaranty contained in the assignment, it was error to refuse to admit the assignment into evidence on the ground that the assignee's signature was not authenticated where other writings containing the assignee's genuine signature were in evidence for comparison purposes."