Opinion by
 

 Stadtfeld, J.,
 

 This is an appeal from a judgment pf the Court of
 
 *60
 
 Common Pleas of Westmoreland County, Pennsylvania, which judgment was entered after a decree of the court en banc refusing the defendants’ motion for a new trial.
 

 The case was tried in the court of common pleas upon an issue devisavit vel non awarded by the President Judge of the Orphans’ Court of Westmoreland County, to determine the validity of the last will and testament of Anna M. Walthour, deceased, and more particularly to try by the jury one specific question of fact, the award of the issue being set forth in the precept from the orphans’ court as follows: “Whether or not the names of Mrs. Anna Herron, S. C. Walthour, James Campbell, Clifford Holmes and Jessie Holmes, were written in the said alleged last will and testament prior to the execution and attestation thereof.”
 

 The decedent, Anna M. Walthour, was a spinster of 89 years of age when she died on January 20, 1939. The writing purporting to be her will was dated January 17,1927 and devised her estate to five of her nephews and nieces, therein named. These nephews and nieces so named in the will are the proponents of the will and the appellees in the appeal before this court. The contestants of the will, who are the appellants in this appeal, are all the other heirs at law of the decedent, who would share in the distribution of the estate of the decedent along with the appellees in the event the will did not stand.
 

 The issue was tried before Snyder, President Judge of the 'Orphans’ court specially presiding in the court of common pleas. A declaration and answer were filed, under the old practice, raising a feigned issue based upon the question of fact to be determined by the jury, but the trial proceeded upon the question of fact framed by the orphans’ court without further reference to the pleadings upon the feigned issue. At the trial, the plaintiffs offered in evidence the will and the record of probate and rested. The trial then proceeded with the
 
 *61
 
 defendants’ evidence, plaintiffs’ rebuttal and defendants’ sur-rebuttal.
 

 The question submitted to the jury for the special verdict was the question of fact embraced in the issue awarded. To this question the jury answered “Yes”, the verdict being in favor of the will and for the plaintiffs. Defendants filed motions for a new trial and for judgment n. o. v., a motion for binding instructions in their favor having been presented at the trial of the case. Both motions were overruled and thereupon judgment was entered on the verdict. This appeal followed.
 

 The first assignment of error is to “admitting cross-examination of defendant’s witness, Mrs. Nettie Williamson, bearing upon her general misconduct and bad character in the past and concerning her actions many years previous to the time at which she testified.”
 

 We quote from the opinion of the court below-: “The defendants relied mainly upon the testimony of two witnesses. One witness, by the name of Nettie Williamson testified that she had seen this will approximately two years after it purports to have been executed and that said names (beneficiaries) were not written therein at that time. We permitted a searching cross-examination of this witness as to her having sworn falsely on previous occasions. Under a number of decisions it seems clear that this was entirely within the discretion of the court. However, without deciding this question and
 
 utterly disregarding and entirely ignoring that part of her testimony,
 
 we have her strange, suspicious story. She was in the orphans’ court during the entire trial there. She testified at that time as to her meeting Anna M. Walthour on various occasions and the idiosyncrasies which she manifested. She told nothing relative to having met her on another occasion wherein her conduct is alleged to have been much more peculiar than on the occasions which were mentioned.
 
 *62
 
 She was undoubtedly familiar with the issues but did not say a word about having seen the will. Although she says she expected a substantial legacy in the will, yet it was not until some weeks after that trial that she recalled having, seen this writing some two years after its execution. It is exceedingly hard to believe that a very willing witness should forget the most important part of her testimony until some weeks after the hearing. This fact, together with her appearance and conduct upon the witness stand and her manner of testifying would make it absurd to permit a jury to find a verdict based largely upon her testimony.” (Italics supplied).
 

 The witness admitted that when she testified in the orphans’ court on June 16, 1939, at length, she did not mention the fact of having seen the will of Anna M. Walthour; not until July 13, 1939, did she tell Mr. Bauer .of counsel for appellants about the will; she claims to have told Mr. Campbell of defendants about the middle of the week before the fourth of July, 1939. She claimed that Miss Walthour, the testatrix, on a visit to the home of the witness, had sat down on a chair in the hall and dropped a paper which the witness did not notice until after Miss Walthour had departed; the paper was in an envelope, but no name on the outside; that she opened it and read it: “it was in the form of a will — and Miss Walthour she told me she put me in her will — after I saw there was no names in there I figured I had a chance.......I was hoping she would leave me something.” She said she noticed some blank lines in the will. “Yes, she wasn’t leaving her money to anybody.” After reading the will, she claimed she followed Miss Walthour, caught up with her and gave it to her.
 

 It was this fantastic tale which evoked the expression of the trial judge in the opinion to which we have just referred.
 

 In view of the fact that the trial judge, sitting as a
 
 *63
 
 chancellor, as stated in his opinion, entirely ignored the portion of the testimony covered by the first assignment of error, it is not necessary to discuss this assignment.
 

 We quote from the opinion of Mr. Justice Drew in
 
 Central Trust Co., Exr., v. Boyer,
 
 308 Pa. 402, 408, 162 A. 806: “......in the trial of an issue to determine the validity of a will, the judge sits as a chancellor
 
 (McCormick v. McCormick,
 
 194 Pa. 107;
 
 Roberts v. Clemens,
 
 202 Pa. 198); the evidence is addressed quite as much to him as to the jury, and he cannot permit the jury to do what he, as a chancellor, would ,not do
 
 (Caughey v. Bridenbaugh,
 
 208 Pa. 414;
 
 Phillips’s Est.,
 
 244 Pa. 35;
 
 Keller v. Lawson,
 
 261 Pa. 489;
 
 Fleming’s Est.,
 
 265 Pa. 399;
 
 Guaranty T. & S. D. Co. v. Heidenreich,
 
 290 Pa. 249). If he feels that the ends ofi justice call for a verdict against the will, or he is so uncertain on this point that he could in good conscience support a finding either way on one or more of the controlling issues involved, the question should be submitted to a jury, and unless, on re-examination after verdict, the evidence proves insufficient to support their finding, that conclusion should stand, even though its effect be to set aside the will
 
 (Tetlow’s Est.,
 
 269 Pa. 486;
 
 Fleming’s Est.,
 
 280 Pa. 252;
 
 Guaranty T. & S. D. Co. v. Heidenreich,
 
 supra;
 
 Mark’s Est.,
 
 298 Pa. 285). In such a case, where the action of the chancellor is based on a consideration of the evidence, there is, in effect, a judicial determination, independent of the finding of the jury, that the verdict ought to stand, and, in the words of Mr. Justice Dean, in
 
 Robinson v. Robinson,
 
 203 Pa. 400, ‘to reverse this judgment, in a stronger sense than is commonly applicable to a disappointed suitor, the laboring oar is on appellant.’ The question then presented to us, on appeal, is whether in view of the relevant rules of law applicable to the particular case, is it conceivable a judicial mind — desiring only to arrive at the truth and do exact justice — could, on
 
 *64
 
 a due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below?’
 
 Tetlow’s Est.,
 
 supra;
 
 Miller’s Est.,
 
 288 Pa. 476;
 
 Wagner’s Est.,
 
 289 Pa. 361;
 
 Llewellyn’s Est.,
 
 296 Pa. 74.”
 

 The second assignment of error relates to the exclusion of evidence “of the good character of Mrs. Nettie Williamson after her character had been attacked.” Her
 
 reputation
 
 for truthfulness had not been attacked. The evidence elicited by cross-examination, referred to in the first assignment of error, even if competent, did not relate to
 
 reputation.
 
 The proposed evidence was therefore properly excluded and the assignment of error is overruled.
 

 The third assignment of error relates to the admission on behalf of plaintiffs of expert testimony on handwriting. This was a holographic will and the issue involved the question whether the names of the legatees were inserted before the execution of the will. As stated in the opinion of the court below, “either the testatrix carried this will around with her for years with said names forged therein or these names were written therein after her death.” We see no error in the admission of the testimony as to the genuineness of the handwriting. This assignment of error is overruled.
 

 The fourth and fifth assignments of error relate to the exclusion of expert evidence on handwriting on behalf of defendants offered in
 
 sur-rébuttal.
 
 The court below sustained objections thereto on the ground that the evidence proposed was a part of defendants’ case in chief and not sur-rebuttal. This rested largely in the discretion of the trial judge. These assignments are overruled.
 

 It is not necessary to discuss the other assignments of error.
 

 After a careful examination of the entire record, we are of the opinion that there is nothing ;therein that would warrant a reversal of the judgment.
 

 Judgment affirmed. Costs to be paid by appellants.