Dworken, Appellant, *v.* McElwee.

Argued May 29, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused September 2, 1946.

*Charles J. Margiotti,* with him *Harry Savage, Margiotti & Casey* and *Caldwell & McFate,* for appellant.

*Alvah M. Shumaker,* with him *Mareline McElwee,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 25, 1946:

This is an action in assumpsit by Jack B. Dworken, appellant, instituted against Ella K. Thayer, now deceased, and for whom William McElwee, Jr., executor of the estate of Ella K. Thayer, deceased, appellee, was made substituted defendant. The defense asserted that the signature to the note upon which the action was based was a forgery. The case was tried before a jury which returned a verdict for appellee. This appeal is from the refusal of the court below to grant appellant's motions for judgment non obstante verdicto and for a new trial.

Jack B. Dworken, appellant, Cleveland attorney, instituted this action on August 23, 1943, against Ella K. Thayer on a promissory note dated September 8, 1937, in amount of $23,136.57. Said note recites that it is "in full payment for all fees for services rendered by Jack B. Dworken to me in the F. W. Koehler Estate." Three days thereafter Ella K. Thayer died and the executor of her estate was substituted as defendant.

At the trial of the case, appellant offered in evidence the promissory note. Max B. Dworken, appellant's brother, also a Cleveland attorney, testified that he had heard of the F. W. Koehler Estate but had no connection with it. The substance of his further testimony is as set forth in the remainder of this paragraph. His first acquaintance with Mrs. Thayer was in their office in Cleveland in November, 1936, where he was a witness to her will. He saw her sign the will and then signed as attesting witness. He saw her next at the Crile Clinic in Cleve-

land when he accompanied his brother on a trip to said Clinic. On September 8th or 9th, 1937, he went with appellant to New Castle, Pennsylvania, where they stopped at the home of Mrs. Thayer. She signed some checks and receipts, and the Koehler estate was discussed. The question of fees was considered and she stated that she had no ready cash but would pay when she sold certain stocks. Appellant thereupon suggested that she give him a note for security which she agreed to do. The note in question was prepared by appellant, signed by her and returned to him. Mrs. Thayer also signed certain receipts at that time which were introduced in evidence.

On October 8th or 9th, 1937, appellant, accompanied by his brother, again visited the home of Mrs. Thayer and delivered to her a refund check from the Treasury Department, for which she signed a receipt. This receipt is also in evidence. The question of fees was again mentioned, and Mrs. Thayer assured appellant that he would have the same within a couple of weeks. At the close of appellant's case a motion for a nonsuit was refused and later withdrawn.

Appellee called one Edith R. Waldeck who testified that she had known Mrs. Thayer about 35 years, that Mrs. Thayer had very poor eyesight and that as she became older her eyesight became worse, and for the last 10 years she used a magnifying glass to write.

Regina Nunley, a public stenographer and a notary public, familiar with Mrs. Thayer's handwriting, corroborated Mrs. Waldeck regarding the weak condition of Mrs. Thayer's eyes. She testified that in her opinion the signature to the note was not that of Mrs. Thayer for the reasons that "it was too good for her signature" and, further, she did not believe Mrs. Thayer "would sign a document of that kind." N. A. Nernberg, a handwriting expert, was called and stated that in his opinion the signature was not that of Mrs. Thayer. He also stated that

the signature in question was far superior to any of the admittedly genuine signatures of Mrs. Thayer.

In rebuttal, appellant called Harry Dinsmore, Assistant Cashier of the Citizens National Bank in New Castle, who stated that he was familiar with the signature of Mrs. Thayer and that in his opinion the signature to the note was genuine. William Boston, formerly a clearing house clerk and teller at the First National Bank in New Castle, stated that although he had never seen her write her name he had seen her signature upon numerous bank records and stated that in his opinion the signature in question was genuine.

The sole issue submitted to the jury was the validity of Ella K. Thayer's signature to the note. The jury returned a verdict in favor of appellee. Appellant contends that the verdict is against the weight of the evidence and that appellee has failed to sustain the burden of proving forgery for the reason that the only lay witness to corroborate the expert testimony gave as the reason for her opinion that the signature was too good and she did not believe decedent would sign such a note.

The position adopted by appellant is too narrow and fails to take into consideration that the expert opinion evidence does not stand alone. In addition to the corroboration by Mrs. Nunley it is strengthened by numerous facts and circumstances.

This Court has repeatedly held that the burden of proving forgery is not sustained by mere opinion evidence in the face of direct and credible evidence: *Young Estate,* 347 Pa. 457, 459, 32 A. 2d 901; *Porter's Estate,* 341 Pa. 476, 483, 19 A. 2d 731; *DeLaurentiis's Estate,* 323 Pa. 70, 76, 186 A. 359; *Henry's Estate,* 276 Pa. 511, 513, 120 A. 454; *Fuller's Estate,* 222 Pa. 182, 183, 70 A. 1005; *Masson's Estate,* 198 Pa. 636, 637, 48 A. 811.

The testimony of these two witnesses does not stand alone. Here, the opinion of the handwriting expert is corroborated by the testimony of Mrs. Nunley, and, as in

*Young Estate,* supra, there are, in addition to the opinion evidence, other circumstances which might have been considered by the jury in arriving at their verdict. Mrs. Thayer admittedly had ample assets with which to pay the principal of the note as well as the interest, yet no payment was made on account of either principal or interest. There was no evidence of any acknowledgment to anyone other than appellant and his brother that the debt was due. There was no proof of correspondence regarding the alleged debt; there was no written demand ever made for either principal or interest notwithstanding that the note had been executed almost six years before suit was instituted thereon. There was no proof of the nature of the services rendered, and it is peculiarly significant that the only witness to all of the alleged transactions and meetings was appellant's brother. It is also significant that suit was not instituted until a few days before Mrs. Thayer's death. All of these facts and circumstances might properly have been considered by the jury. These circumstances, together with the testimony of Mrs. Nunley and Mr. Nernberg, amply support the verdict of the jury.

Mrs. Nunley and Mr. Nernberg were competent witnesses. The Act of 1895, P. L. 69, section 1, as amended, 28 P.S. section 161, determines their competency. Section 4 of the Act of 1895, 28 P.S. section 164, provides: "The opinions of the witnesses to handwriting being submitted as competent testimony to the jury, the final determination as to whether any particular handwriting is genuine or simulated shall remain, as heretofore, a question for the jury on all the evidence submitted." The court below properly charged the jury that it was their duty to determine from the evidence whether Mrs. Thayer's signature to the note was genuine, and, by their verdict, they found it to be a forgery.

Judgment affirmed.