Brueckner *v.* Pittsburgh, Appellant.

Argued September 27, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*James G. Legnard,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

*Martin E. Geary,* with him *Clyde P. Bailey* and *Bailey & Geary,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 15, 1951:

James Brueckner, age three and one-half years, was injured as a result of a fall from his tricycle either on the sidewalk or on the street immediately in front of his home in the City of Pittsburgh. Suit was instituted against the City on his behalf by his guardian and by his mother and father individually. At a trial before a jury, diametrically opposing stories of the manner in which the accident occurred, as well as the precise place of the accident, were adduced. Defendant, the City of Pittsburgh, on cross-examination of the mother, confronted her with a letter written to the Department of Public Safety and she admitted her signature there-

on to be genuine. She was also shown a second statement purportedly given by her and containing her signature and another statement purportedly given by the sister of the boy and upon which was affixed the mother's signature as a witness. She denied having signed both statements and denied seeing the representative of the City, pointed out to her in open court, as the man who interviewed her and her daughter and secured their statements and signatures. Permission was requested from the court to permit the jury to see the admitted signature and the purported signatures on the asserted statements, thus to enable the jury to determine whether the signatures were made by one and the same person.

Counsel for plaintiffs objected, stating: "I think where the witness has denied she has signed the paper in question it is not admissible under any circumstances. I don't think the City is entitled to prove signatures other than through the testimony of the signer herself or by way of expert testimony, which they have not offered." Counsel for the City then offered the papers in evidence for the purpose of permitting the jury to compare the three signatures. The court stated: "It is irrelevant. Motion denied." Subsequent offer was made by counsel for the City of the statements purported to be signed by the mother and the sister. Objection was again made for the reason that the witness denied signing the statements and denied the signatures thereon. The court stated: "In view of the direct contradiction by the plaintiff that she signed the statements in question or similar statements, the Court is not of the impression that there is enough to submit to the jury the credibility of either witness on that particular issue. Under those circumstances the motion is refused, and an exception noted to the defendant."

The court in its charge to the jury said, with regard to the signing of the statements: "There was some tes

timony here that an investigator on the part of the City of Pittsburgh spoke with Mrs. Brueckner about the accident and she was questioned on the nature of the accident. It was testified by the investigator that she signed a statement. She denied having signed that statement, and that statement is not before you for any deliberation. So, we want to warn you on that matter. The statement was discussed here on the witness stand but it was not actually introduced into evidence. So, therefore, you merely have the word of one person as against another as to whether the statement was or was not signed, but you do not have the statement itself." The jury returned a verdict against the City. These appeals are from entry of judgment on the verdicts following dismissal of motions for judgment *non obstante veredicto* and for a new trial. Only the dismissal of the motion for new trial was pressed and argued before this Court.

Disposition of this appeal requires us to pass upon only the relevancy of the proffered signatures and whether, if relevant, prejudicial error was committed in denying the jury the right to examine and consider the signatures in its determination of the credibility of the mother and the witness for the City.

No objection was made to the manner by which cross-examination of the mother brought out matters of defense nor to the identification and offering of the genuine signature and purported signatures during presentation of plaintiffs' case. Further, the trial judge sustained the objection for the sole reason that the signatures were "irrelevant".

We are of opinion that the court below committed reversible error in not permitting the jury to have before it the admittedly genuine signature and the signatures contained on the purported statements. The verdicts of the jury in plaintiffs' favor must stand or fall principally upon the testimony of the mother. Her credi-

bility, therefore, became of the greatest importance for if the jury concluded that she was not a credible witness it could properly have disbelieved her testimony in its entirety, or at least as regards the pivotal facts and have concluded in favor of the City. It should be emphasized that the letter and statements themselves were not offered for proof of their contents but only to enable the jury to determine whether the signatures contained on the purported statements were those of the mother or a forgery, and that the sole reason for the rejection of the proffered evidence was that it was "irrelevant".

Equally important to a proper determination of the merits of the case was the testimony of the representative of the City who testified that the statements were authentic and the signatures were those of the mother. Determination by the jury of the validity or invalidity of the signatures was equally material in so far as his credibility was concerned.

The stated basis for the objection to the offer for comparison purposes impliedly concedes that expert testimony with regard to the validity of the signatures would have been admissible. We do not now pass upon the merits of this apparent concession. It is a well established principle, however, that expert testimony is to be admitted for the purpose of assisting the jury or the court, as the case may be, upon matters involving special skills and requiring study and experience for comprehension and with which the ordinary layman is not conversant: *W. S. Graham v. Pennsylvania Co.,* 139 Pa. 149, 159, 21 A. 151; *Campbell v. Campbell,* 146 Pa. Superior Ct. 58, 21 A. 2d 476; *Shannon v. Castner,* 21 Pa. Superior Ct. 294. The admission of opinion evidence by experts, however, has never been held to take away from the jury its power and duty to determine the evidentiary facts. In *Travis v. Brown,* 43 Pa. 9, at p. 17 this Court said: ". . . evidence touching the genuineness of a paper in suit may be corroborated by a

comparison, *to be made by the jury,* between that paper and other well authenticated writings of the same party.": See *Shannon v. Castner,* supra; *Dworken v. McElwee,* 355 Pa. 37, 41, 48 A. 2d 566; 20 Am. Jur., Evidence §835. So here the jury, without expert testimony regarding the genuineness of the respective signatures, should have been permitted to determine the fact and the court should have instructed the jury in that respect.

It is suggested by appellees that if the rejection of the testimony was error such error was harmless particularly in that the contents of the purported statements had been testified to by the witness for the City. Appellee's argument is directed at the contents of the statements. It can have no relation to the signatures. It is the latter with which we are concerned. What has been said above clearly establishes the prejudicial nature of the error of depriving the jury of the benefit of viewing the signatures, as well as taking away its function to determine the authenticity thereof in connection with the credibility of the mother and the City's witness. If the jury had found that the mother signed the statements—the facts averred in which were substantially different from those testified to by her on the witness stand—such finding might well have had a devastating effect upon the plaintiffs' case.

Judgment reversed and a new trial granted.