## Oaks Fire Company, Appellant, *v.* Herbert.

358

Argued April 16, 1957.   Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*William L. Huganir,* for appellant.

*Desmond J. McTighe,* with him *Lawrence A. Brown* and *Duffy, McTighe & McElhone,* for appellee.

OPINION BY MR. JUSTICE BELL, May 29, 1957:

This is an appeal from a decree of the Equity Court of Montgomery County overruling plaintiff's exceptions to the Court's adjudication in an action to quiet title. Plaintiff owns a tract of ground in Montgomery County which was conveyed to it by the Commissioners of Montgomery County on June 1, 1953. The Commissioners of Montgomery County had received title on February 23, 1943 through two sales of the premises conducted on February 1, 1940 and December 8, 1941, for unpaid taxes.

On July 6, 1953, plaintiff brought this action to quiet title in order to have two mortgages given by Frank Macomb Gumbes in the principal amounts of $6500 and $9000, respectively, satisfied of record. Plaintiff named as defendants, inter alia, two heirs of the original mortgagor. One heir, Rebecca G. Whitemarsh, is the only child and daughter of Frank Macomb Gumbes; the second heir, R. Sheldon Herbert, is the granddaughter and only grandchild of Frank M. Gumbes. After issue was joined, a trial without a jury was held. The lower Court discharged the lien of the $6500 mortgage and the defendant filed no exception thereto, so that the $9000 mortgage alone is the subject of this appeal.

The sole legal issue raised in the case at bar is whether the evidence offered by defendants was sufficient to rebut the presumption of payment of the $9000 mortgage.

On June 8, 1903, Frank M. Gumbes executed a mortgage of $9000, payable in one year, to the Norristown Trust Company, secured on premises at Oaks, Montgomery County, Pennsylvania. The property was called "Broadview" by the mortgagor and his family. The mortgage was assigned successively to the following assignees: (a) To The Pennsylvania Company for

Insurances on Lives and Granting Annuities, on July 30, 1929; (b) To Frank S. Coffin, also known as Franklin S. Kauffin, on January 24, 1942; (c) To Rebecca G. Whitemarsh, on March 8, 1945; (d) To Maxine C. Anderson, on July 27, 1948; and (e) To R. Sheldon Herbert, on April 22, 1950. The receipts, disbursements, records and files of The Pennsylvania Company pertaining to this $9000 mortgage were destroyed in accordance with the policy of that Company to maintain its files for a period of only 10 years. Moreover, the mortgagor, Frank Macomb Gumbes, died in 1945 and his wife, Rebecca M. Gumbes, died in 1946. Frank S. Coffin is also deceased.

The crucial factual issue revolves around two alleged receipts which referred to interest payments on the $9000 mortgage, Rebecca G. Whitemarsh, daughter of Mr. and Mrs. Frank Macomb Gumbes (the original mortgagor), was administratrix of the estate of Rebecca M. Gumbes. She testified that she found the receipts in question among the papers of Rebecca M. Gumbes. The trial Judge believed her and admitted the receipts into evidence over the objections of the plaintiff. The first receipt, written on the mortgagee's letterhead, was handwritten and read as follows:

"F. S. COFFIN
Carpenter & Builder
4907 Cedar Avenue
Philadelphia, Pa.

Dec. 15 1942

"Received from Rebecca M. Gumbes Dec. 1 1942, the sum of Four hundred and fifty (450.00, dollars on account of Interest on $9000—mortgage, covering property at Oaks, Montg. Co. Penna. The same to be used in alteration and repairs etc. on property.

(s) F. S. Coffin"

The second receipt stated:

"January 15, 1945

"Received the above date five hundred and forty ($540.00) dollars from Francis M. Gumbes representing interest for 1945 on Broadview, Oaks, Pennsylvania, mortgage.

(s) Frank S. Coffin"

The trial Judge, as mentioned supra, admitted the receipts into evidence and held that the evidence offered by the defendants was sufficient to rebut the presumption of payment of the mortgage and consequently refused to discharge the lien of the $9000 mortgage. Plaintiff's exceptions to the adjudication were overruled by the Court en banc.

The law applicable in the instant case is well established. In *Engemann v. Colonial Trust Co.*, 378 Pa. 92, 105 A. 2d 347, this Court thus summarized the pertinent legal principles (pages 95-97):

"In Corn v. Wilson, 365 Pa. 355, 75 A. 2d 530, this Court said (pp. 358, 359): 'There is a long established presumption that a mortgage, as well as all evidences of debt excepted out of the Statute of Limitations, unclaimed and unrecognized for 20 years, has been paid: [citing cases]. This presumption of payment after a lapse of 20 years is a strong one and is favored in law as tending to the repose of society, the protection of the debtor, and the discouragement of stale claims: [citing cases].

" 'The presumption of payment may be rebutted only by clear, satisfactory and convincing evidence beyond that furnished by the specialty itself, that the debt has not been paid, or by proof of circumstances tending to negative the likelihood of payment and sufficiently accounting for the delay of the creditor: [citing cases].

" 'Moreover, whether the facts and evidence relied upon to rebut the presumption of payment are true is by the mortgagor (to the mortgagee or even to a

a question of fact for the jury; but whether, if true, they are sufficient to rebut the presumption, is a question of law for the court: [citing cases].'

"While the presumption of payment increases in strength with the passage of years (after the first twenty) and is likewise, strengthened by the death of the debtor: Frey's Estate, 342 Pa. 351, 354, 21 A. 2d 23; Gilmore v. Alexander, 268 Pa. 415, 422, 112 A. 9, 11; Richards v. Walp, 221 Pa. 412, 70 A. 815; Cannon v. Hileman, 229 Pa. 414, 78 A. 932; Gregory v. Commonwealth, 121 Pa. 611, 15 A. 452; long lapse of time plus evidence sufficient to raise a presumption of payment cannot prevail against positive credible evidence of nonpayment: Snyder Estate, 368 Pa. 393, 397, 84 A. 2d 318; Grenet's Estate, 332 Pa. 111, 2 A. 2d 707.

"In Grenet's Estate, supra, . . . Mr. Justice, now Chief Justice, STERN said (pp. 113, 114): 'Appellant relies upon the proposition that recovery was barred by the lapse of twenty-six years between the time when the note was payable and when it was presented at the audit.

"'The presumption of payment arising from lapse of time does not work an extinguishment of the debt, nor, unlike the bar of the statute of limitations, does it require a new promise or its equivalent to revive it. It is a presumption merely of fact, and amounts to nothing more than a rule of evidence which reverses the ordinary burden of proof and makes it incumbent upon the creditor to prove . . . that the debt was not actually paid. . . .' "

It is our opinion that the two receipts mentioned above were properly admitted into evidence and showing a payment of interest, were sufficient to rebut the presumption of payment.

In *Engemann v. Colonial Trust Co.,* 378 Pa., supra, the Court said (pages 97-98): "Moreover, admissions

stranger) that the mortgage had not been paid are admissible even though made more than 20 years after the mortgage became due, provided they are made within 20 years before suit is brought: Frey's Estate, 342 Pa. 351, 355, 21 A. 2d 23; Gregory v. Commonwealth, 121 Pa. 611, 622, 15 A. 452; O'Hara v. Corr, 210 Pa. 341, 59 A. 1099; Grenet's Estate, 332 Pa., supra."

Moreover, the surrounding circumstances further rebutted the presumption of payment. Frank Macomb Gumbes, the original mortgagor, was a member of both the Montgomery and Philadelphia County Bars. As an attorney, he obviously knew that the twenty year presumption of payment doctrine would operate in his favor. It is unlikely that he or his wife would pay the interest if it was not legally due. It is very unlikely that the Pennsylvania Company would take an assignment of a mortgage in 1929 if it had been paid or if it could have been contended that it had been presumptively paid.*

Appellant contends that the two receipts in question were inadmissible since the signatures thereon were not properly authenticated. This contention has no merit. A valid assignment of the mortgage from Frank S. Coffin to Rebecca G. Whitemarsh was introduced into evidence for the purpose, inter alia, of authenticating the signatures on the two receipts. The mortgage assignment was notarized, thus lending further credibility to its validity; and no objection to its introduction into evidence was made by the plaintiff (appellant).

The lower Court in its opinion stated: "A careful reexamination of the signature on the assignment and the signatures on the receipts, has not altered our conviction that the three documents were signed by one

---

* It would have insisted on a declaration of no set-off.

and the same person. The fact that the signatures on the assignment and on the second receipt bear the earmarks of the signer's physical infirmity which were not discernible in the signature of the first receipt, tends to strengthen, rather than weaken, this conviction. There is so striking a similarity of the handwriting on the three documents that in the absence of any evidence of their lack of authenticity, we consider ourselves compelled to declare them the product of a single hand."

The lower Court, acting in its capacity as a jury, has the power to compare the signatures on the two receipts in question with the valid signature on the mortgage assignment and determine, without the aid of expert testimony, the authenticity of the signatures: *Brueckner v. Pittsburgh,* 368 Pa. 554, 84 A. 2d 197; *Seaman v. Husband,* 256 Pa. 571, 100 A. 941. In *Brueckner v. Pittsburgh,* 368 Pa., supra, the Court said (pages 558-559):

". . . It is a well established principle, however, that expert testimony is to be admitted for the purpose of assisting the jury or the court, as the case may be, upon matters involving special skills and requiring study and experience for comprehension and with which the ordinary layman is not conversant: W. S. Graham v. Pennsylvania Co., 139 Pa. 149, 159, 21 A. 151; Campbell v. Campbell, 146 Pa. Superior Ct. 58, 21 A. 2d 476; Shannon v. Castner, 21 Pa. Superior Ct. 294. . . . In Travis v. Brown, 43 Pa. 9, at p. 17 this Court said: '. . . evidence touching the genuineness of a paper in suit may be corroborated by a comparison, to be made by the jury, between that paper and other well authenticated writings of the same party.': See Shannon v. Castner, supra; Dworken v. McElwee, 355 Pa. 37, 41, 48 A. 2d 566; 20 Am. Jur., Evidence §835. So here the jury, without expert testimony regarding the genuineness of the respective signatures, should have been permitted to determine the fact and the court should have instructed the jury in that respect."

What this Court said in *Snyder Estate*, 368 Pa. 393, 84 A. 2d 318, is peculiarly appropriate here: "Where an auditing judge or chancellor who sees and hears the witnesses finds facts which have competent and adequate evidence to support them and these findings are approved by the court in banc, they will not be reversed on appeal: Borden Trust, 358 Pa. 138, 56 A. 2d 108; Grenet's Estate, 332 Pa. 111, 2 A. 2d 707; Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729."

Decree affirmed. Each party shall pay their own (respective) costs.